# EXHIBIT A



Select Language ⌄

Powered by Google **Translate**

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2021-013125 | Judge: | Martin, Daniel |
| File Date: | 8/19/2021 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Paul J Theut | Plaintiff | Male | J Taber |
| E R | In The Matter Of (IMO) | Unknown | Paul Theut |
| D R | In The Matter Of (IMO) | Unknown | Paul Theut |
| G R | In The Matter Of (IMO) | Unknown | Paul Theut |
| Y R | In The Matter Of (IMO) | Unknown | Paul Theut |
| City Of Phoenix | Defendant | | Pro Per |
| Jeri L Williams | Defendant | Female | Pro Per |
| Kyle Fricke | Defendant | Male | Pro Per |
| Andrew Carlsson | Defendant | Male | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 9/9/2021 | ORD - Order | 9/9/2021 | |
| **NOTE:** ORDER APPOINTING STATUTORY REPRESENTATIVE | | | |
| 9/2/2021 | AFS - Affidavit Of Service | 9/7/2021 | |
| **NOTE:** PHOENIX POLICE DEPARTMENT | | | |
| 9/2/2021 | AFS - Affidavit Of Service | 9/7/2021 | |
| **NOTE:** JERI L WILLIAMS | | | |
| 8/31/2021 | AFS - Affidavit Of Service | 9/3/2021 | |
| **NOTE:** ANDREW CARLSSON AND JANE DOE CARLSSON | | | |
| 8/31/2021 | MOT - Motion | 9/3/2021 | |
| **NOTE:** Motion for Appointment of Statutory Representative | | | |
| 8/19/2021 | COM - Complaint | 8/20/2021 | |
| **NOTE:** Complaint | | | |
| 8/19/2021 | CSH - Coversheet | 8/20/2021 | |
| **NOTE:** Civil Cover Sheet | | | |
| 8/19/2021 | CCN - Cert Arbitration - Not Subject | 8/20/2021 | |
| **NOTE:** Certificate Of Compulsory Arbitration - Is Not Subject To | | | |
| 8/19/2021 | SUM - Summons | 8/20/2021 | |
| **NOTE:** Summons | | | |
| 8/19/2021 | SUM - Summons | 8/20/2021 | |
| **NOTE:** Summons | | | |
| 8/19/2021 | SUM - Summons | 8/20/2021 | |
| **NOTE:** Summons | | | |
| 8/19/2021 | SUM - Summons | 8/20/2021 | |
| **NOTE:** Summons | | | |
| 8/19/2021 | SUM - Summons | 8/20/2021 | |
| **NOTE:** Summons | | | |
| 8/19/2021 | NJT - Not Demand For Jury Trials | 8/20/2021 | |
| **NOTE:** Jury Demand | | | |
| 8/19/2021 | SUM - Summons | 8/20/2021 | |
| **NOTE:** Summons | | | |

**Case Calendar**

**There are no calendar events on file**


**Judgments**

**There are no judgments on file**

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272268

Person/Attorney Filing: John T Taber
Mailing Address: 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Phone Number: (602)777-7000
E-Mail Address: ttaber@burgsimpson.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 005204, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Paul J. Theut
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  CV2021-013125

**SUMMONS**

To: Jane Doe Carlsson

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 19, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *JACQUELINE NELSON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set 85016523

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272267

Person/Attorney Filing: John T Taber
Mailing Address: 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Phone Number: (602)777-7000
E-Mail Address: ttaber@burgsimpson.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 005204, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Paul J. Theut
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  CV2021-013125

**SUMMONS**

To: Andrew Carlsson

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson,</u>
   <u>Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's</u>
   <u>approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 19, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *JACQUELINE NELSON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZTurboCourt.gov Form Set #6016523

2

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272266

Person/Attorney Filing: John T Taber
Mailing Address: 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Phone Number: (602)777-7000
E-Mail Address: ttaber@burgsimpson.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 005204, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Paul J. Theut
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2021-013125**

**SUMMONS**

To: Jane Doe Fricke

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

AZTurboCourt.gov Form Set #6010523

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 19, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *JACQUELINE NELSON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272265

Person/Attorney Filing: John T Taber
Mailing Address: 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Phone Number: (602)777-7000
E-Mail Address: ttaber@burgsimpson.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 005204, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Paul J. Theut
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2021-013125**

**SUMMONS**

To: Kyle Fricke

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

AZTurboCourt.gov Form Set #6010523

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 19, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *JACQUELINE NELSON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6016033

2

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272264

Person/Attorney Filing: John T Taber
Mailing Address: 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Phone Number: (602)777-7000
E-Mail Address: ttaber@burgsimpson.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 005204, Issuing State: AZ

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

Paul J. Theut
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2021-013125**

**SUMMONS**

To: Jeri L Williams

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
   Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
   approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

AZturboCourt.gov Form Set 660/16523

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 19, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *JACQUELINE NELSON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272263

Person/Attorney Filing: John T Taber
Mailing Address: 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Phone Number: (602)777-7000
E-Mail Address: ttaber@burgsimpson.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 005204, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Paul J. Theut
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2021-013125**

**SUMMONS**

To: City of Phoenix

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 19, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *JACQUELINE NELSON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #6010533

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272259

1   J. Tyrrell Taber (005204)
2   Christopher Post (028330)
    Adam J. Gorski (036490)
3   **BURG SIMPSON**
    **ELDREDGE HERSH & JARDINE, P.C.**
4   2390 E. Camelback Road, Suite 403
    Phoenix, AZ 85016
5   Telephone: (602) 777-7000
    Facsimile: (602) 777-7008
6   ttaber@burgsimpson.com
    cpost@burgsimpson.com
7   agorski@burgsimpson.com
    Send All Minute Entries to:
8   azcourt@burgsimpson.com
    *Attorneys for Plaintiffs*
9
    J. Blake Mayes (024159)
10  Edward G. Hamel (036364)
    **MAYES TELLES PLLC**
11  3636 N. Central Avenue, Suite 1000
    Phoenix, AZ 85012
12  Telephone: (602) 714-7900
    Facsimile: (602) 357-3037
13  Blake@mayestelles.com
    Edward@mayestelles.com
14  *Attorneys for Plaintiffs*

15              **ARIZONA SUPERIOR COURT**

16               **MARICOPA COUNTY**

17  PAUL J. THEUT, in his capacity as          Case No.   **CV2021-013125**
18  guardian *ad litem* (application pending) to
    E.R., D.R., G.R., and Y.R., minors, as
19  statutory Plaintiffs and beneficiaries of    **COMPLAINT**
    HENRY RIVERA, deceased,
20
                            Plaintiffs,
21                                               (Tort – Municipal
                                                 Liability/Wrongful Death)
22  vs.
                                                 (Tier 3)
23

24  CITY OF PHOENIX, an Arizona
    municipal corporation and governmental
25  entity; JERI L. WILLIAMS, in her official
    capacity as Chief of Police for the City of
26  Phoenix; KYLE FRICKE, in his individual
    and official capacity as law enforcement
27  officer of the Phoenix Police Department
    and JANE DOE FRICKE, husband and
28  wife; ANDREW CARLSSON, in his

1  individual and official capacity as law
   enforcement officer of the Phoenix Police
2  Department and JANE DOE CARLSSON,
   husband and wife;  and JOHN and JANE
3  DOES 1 – 10,

4                           Defendants.

5

6          Paul J. Theut, in his capacity as guardian *ad litem* (application pending) for Plaintiffs

7  E.R., D.R., G.R., and Y.R., minors (collectively "Plaintiffs"), and for their Complaint

8  against Defendants, alleges as follows:

9                                    **PARTIES**

10         1.      This Complaint is for damages arising out of the wrongful death of Henry

11 Rivera ("Henry") on March 13, 2019, in Maricopa County, Arizona.

12         2.      Plaintiff E.R., age two, born in the fall of 2018, was a resident of Maricopa

13 County, Arizona, at the time of the events alleged herein.

14         3.      Plaintiffs D.R., age 10, born in the fall of 2008; G.R., age eight, born in the

15 winter of 2013; and Y.R., age 14, born in the winter of 2007, are residents of Riverside

16 County, California.

17         4.      Plaintiffs are the surviving minor children of Henry and bring this action

18 individually and as the surviving statutory beneficiaries of Henry.

19         5.      Pursuant to the Arizona Wrongful Death Act, A.R.S. § 12-611 *et seq.*, Plaintiffs

20 are the proper statutory Plaintiffs and beneficiaries to bring this action.

21         6.      The City of Phoenix (the "City") is a municipal corporation and

22 governmental entity organized under the laws of the State of Arizona.  With respect to

23 Plaintiffs' claims under Arizona state law, the City is independently liable for its own acts

24 and omissions and vicariously liable for the acts and omissions of the officers, employees,

25 principals, agents, servants, contractors, and/or representatives of the Phoenix Police

26 Department acting in the scope of their employment.  The City is a "person" for purposes

27 of 42 U.S.C. § 1983.  *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690

28 (1978).

                                     - 2 -

7.     Defendant Jeri L. Williams ("the Chief") is the duly appointed Chief of Police and primary policymaker of the City of Phoenix Police Department.  With respect to Plaintiffs' claims under Arizona state law, the Chief is liable for her own acts and omissions and is vicariously liable for the acts and omissions of the officers, employees, principals, agents, servants, contractors, and/or representatives of the Phoenix Police Department.  The Chief is a "person" for the purposes of 42 U.S.C. § 1983.

8.     At all times relevant, the City and Chief operated and acted through the City of Phoenix Police Department ("PHXPD"), a non-jural entity, and ratified the acts and omissions alleged herein.

9.     At all times relevant, the City and Chief were acting by and through their duly authorized officers, employees, principals, agents, servants, contractors, and/or representatives who shot and killed Henry on March 13, 2019.

10.    The City and Chief, through their duly authorized officers, employees, principals, agents, servants, contractors, and/or representatives, conducted a joint enterprise or joint venture resulting in each of the Defendants named herein being the principal and agent of the other.  On March 13, 2019, Defendants had an agreement, common purpose, or community interest, and are therefore jointly and severally liable for the damages suffered by Plaintiffs.

11.    Defendant Kyle Fricke ("Defendant Fricke"), in his individual and official capacity, and as a sworn law enforcement officer for PHXPD, is responsible for the wrongful shooting and killing of Henry.  On March 13, 2019, Defendant Fricke was employed by the City and Chief and was acting within the course and scope of his employment and under the color of state law.  Defendant Fricke is a "person" for the purposes of 42 U.S.C. § 1983.

12.    Defendant Fricke is sued both in his official and individual capacity for purposes of the claims alleged herein.

13.    Upon information and belief and at all times relevant, Defendant Jane Doe Fricke was the wife of Defendant Kyle Fricke and all of the acts and omissions complained

- 3 -

of herein were done in furtherance of their marital community, which is jointly and severally liable to Plaintiffs.

14.     Defendant Andrew Carlsson ("Defendant Carlsson") in his official and individual capacity, and as a sworn law enforcement officer for PHXPD, is responsible for the wrongful shooting and killing of Henry.  On March 13, 2019, Defendant Carlsson was employed by the City and Chief and was acting within the course and scope of his employment and under the color of state law.  Defendant Carlsson is a "person" for the purposes of 42 U.S.C. § 1983.

15.     Defendant Carlsson is sued both in his official and individual capacity for purposes of the claims alleged herein.

16.     Upon information and belief and at all times relevant, Defendant Jane Doe Carlsson was the wife of Defendant Andrew Carlsson and all of the acts and omissions complained of herein were done in furtherance of their marital community, which is jointly and severally liable to Plaintiffs.

17.     Defendants John and Jane Does 1 – 10 are persons whose relationships to the named Defendants or whose acts or omissions give rise to legal responsibility for the damages suffered by Plaintiffs, but whose true identities are unknown to Plaintiffs at the present time. These persons are hereby notified of Plaintiffs' intention to join them as Defendants if, and when, additional investigation or discovery reveals the appropriateness of such joinder. Plaintiffs will seek leave of the Court to substitute their true names accordingly when the true and correct identities of these persons are learned, together with the appropriate charging allegations.

## JURISDICTION AND VENUE

18.     The amount in controversy is within the jurisdictional requirements of this Court.

19.     This action arises out of the fatal shooting of Henry Rivera in Phoenix, Arizona. Defendants therefore have caused events to occur in Maricopa County, Arizona,

which form the basis of this Complaint.

20.     Venue is proper in this Court.

21.     With respect to the Arizona state law claims set forth below, Plaintiffs have complied with the provisions of A.R.S. § 12-821.01 by timely filing a Notice of Claim against the above-named Defendants.

22.     Defendants failed to respond to Plaintiffs' Notice of Claim and more than 60 days have passed since they were served with Plaintiffs' Notice of Claim.   Therefore, Plaintiffs' Notice of Claim is deemed denied.

23.     Pursuant to Ariz. R. Civ. P. 8 and 26.2, Plaintiffs certify this action under Tier 3 discovery.

## GENERAL ALLEGATIONS

24.     On March 12, 2019, Eddison Jesus Noyola allegedly shot three people, killing two, and kidnapped his girlfriend, Andrea Dixon.   Noyola and Dixon then disappeared with a stolen pistol in a stolen Chevrolet Malibu.

25.     The PHXPD led a city-wide manhunt for Noyola and Dixon.   The PHXPD enlisted local media to publish Noyola's and Dixon's photographs.

26.     Andrea Dixon's photograph depicted her as young, Hispanic, and having multiple large facial tattoos on her forehead.

27.     As to Noyola, the PHXPD issued a warning to the public:

///

///

///

///

///

///

///

///

- 5 -

**"ARMED AND EXTREMELY DANGEROUS"**



*Eddison Noyola*                    *Andrea Dixon*

28.    In addition to the photographs, the media published descriptions of Noyola and Dixon:

> <u>Noyola</u>:  **5'10", 190 pounds and possibly wearing a red ball cap and long-sleeved shirt.**

> <u>Dixon</u>:  **wearing a white sweater, jeans, and gym shoes.**

> *Noyola and Dixon have large, visible tattoos on their face.*

(Emphasis added).

29.    On the morning of March 13, 2019, the PHXPD located the stolen Malibu near 15th Avenue and Polk after it received a call-in tip from the public.

30.    Upon receiving the caller's tip, the PHXPD dispatched several officers and specialized units to canvas the area, including the Street Crimes detectives, Special Assignments Unit[1] ("SAU"), and Fugitive Apprehension Investigative Detail ("FAID").

---

[1] SAU officers are the officers most likely to use lethal force in the Phoenix metropolitan area. *See Body-worn camera footage release of shooting by Phoenix police officers in Buckeye*, Arizona Republic (July 7, 2020), https://www.azcentral.com/story/news/local/phoenix/2020/07/22/footage-released-shooting-phoenix-police-officers-buckeye/5488207002/.

- 6 -

31.     The directive given at the time as to Noyola and Dixon was clear: "take them at the vehicle."

32.     In July 2018, Henry and his fiancée, Natalie Mejia ("Natalie"), pregnant with E.R., and Natalie's young son, E.M., boarded a bus in California, headed for Colorado Springs, Colorado, to build a better life for their family.

33.     As their bus approached Phoenix, Natalie began to experience complications with her pregnancy.  The pain forced the family to delay their move and to go to St. Joseph's Medical Center.  The diagnosis was problematic, and Natalie was advised not to travel until after the birth of E.R. which occurred in Maricopa County that fall.

34.     The layover in Phoenix quickly consumed the family's savings.  Although Henry found work doing odd jobs, the family did not have permanent housing or a vehicle and bounced from place to place.

35.     Approximately two weeks before Henry's shooting, Lauren Hankins, an acquaintance of Henry and Natalie, helped them obtain a room at the Lamplighter Motel near 19th Avenue and Van Buren using her photo ID.

36.     Henry was also offered a job as the motel's custodian and handyman and the family settled into the motel.

37.     On the morning of March 13, 2019, acting upon a tip from the public, the PHXPD descended on the Lamplighter Motel in search of Noyola.

38.     Because of the heavy police presence outside his room, Henry as a young Hispanic male, shut down, overcome by fear and foreboding.

39.     Henry panicked and locked himself in the bathroom of his motel room.

40.     Natalie was already frantic when she opened the door of the family's motel room to assess the situation.

41.     The detectives outside the motel room told Natalie to "grab her kids" and walk toward them.

42.     At no time did the PHXPD tell Natalie they were searching for Noyola and

Dixon.

43.     At no time did the PHXPD ask Natalie whether she was with Eddison Noyola.

44.     At no time did the PHXPD ask Natalie whether she was Andrea Dixon, despite her lacking large, prominent tattoos on her forehead like Dixon.

45.     The detectives outside the motel room observed Natalie as being a "white" female.

46.     No reasonably prudent police officer could mistake Natalie for Andrea Dixon.



*Henry (left) and Natalie (right)*

47.     The PHXPD also ignored that Natalie was with young children even though the warning issued by the PHXPD to public indicated Noyola and Dixon were alone.

48.     Henry climbed out the bathroom window and ran, fearing for his life and the safety of his family.

49.     The PHXPD has state of the art communication systems that allow instant updates to all officers in the field. Although it would have taken a matter of seconds for the detectives outside Natalie's motel room to use such available equipment to inform the PHXPD that Natalie was not Andrea Dixon, they did not do so.

50.     A police helicopter captured Henry in full view as he ran from the motel, climbing over fences, and moving toward True Fix, a nearby auto repair shop.

51.     At True Fix, Henry found a vehicle with its key in the ignition, entered it, and tried to drive away. A police vehicle blocked his path, but Henry drove in the other direction, away from conflict. At no point, whether on foot or in the vehicle, did Henry pose a threat or try to "ram" the officers.

52.     Instead, Henry drove the vehicle for approximately 30 seconds in a circle before he stopped at the entrance of True Fix. Henry sat in the vehicle at a complete stop, unarmed, and surrounded by law enforcement.

53.     Henry never brandished a weapon, walked toward, or confronted any officer as they approached the vehicle.

54.     Officers Baraban and Paulson of the PHXPD reported that at no time did they observe Henry's vehicle strike another vehicle or observe him with a weapon.

55.     A group of PHXPD officers lined up facing Henry in a firing squad-like fashion.

56.     The PHXPD never asked Henry to positively identify himself.

57.     The PHXD fired multiple shots at the vehicle, shattering a window.

58.     Henry, in fear for his life, opened the driver's door—with his hands in plain view—and began to run away from the officers surrounding the vehicle.

59.     Any reasonable person in Henry's situation would have tried to escape from the vehicle to avoid being shot.

60.     Henry made it only a few steps before the PHXPD shot him in the back.

61.     Henry immediately collapsed to the ground, was immobilized, and was not a

threat to officers.

62.    Defendants Fricke and Carlsson shot Henry at least two times with lethal ammunition rounds.

63.    One round penetrated Henry's left lower posterior torso.

64.    The other round penetrated Henry's left upper posterior torso, lacerating his pericardial sac, hemopericardium, and left hemothorax.

65.    With Henry immobile and helpless on the ground, Defendant Carlsson ordered his K-9 to attack him.

66.    After Henry was killed, the PHXPD lied to Natalie about whether Henry was dead or alive.

67.    Natalie later learned from another person at the Lamplighter Motel that Henry had been killed by the PHXPD.

68.    The PHXPD created a conflict of interest by allowing two PHXPD detectives to attend Henry's autopsy.

69.    Another local law enforcement agency should have attended Henry's autopsy to safeguard against any potential conflict of interest.

70.    According to the City's website, officers assigned to the PHXPD's SAU, more commonly known as "SWAT",[2] serve search warrants and handle barricade situations. The SAU uses similar equipment, clothing, weapons, and techniques to that or military special operations units.[3]  In addition to the use of special tactics, "special negotiators" are assigned to the unit.

71.    Regardless of which unit of the PHXPD an officer is assigned, all officers are subject to the laws, rules, regulations, and policies applicable to the PHXPD.

72.    All officers are required to follow the PHXPD's policies and practices

_____

[2] *Glossary of Terms*, City of Phoenix, https://www.phoenix.gov/police/glossary-of-terms (last visited June 10, 2021).
[3] *Special Assignments Unit*, American Special Ops, https://www.americanspecialops.com/ photos/law-enforcement/special-assignments-unit.php (last visited June 10, 2021).

concerning, regarding, or relating to firearms discharge.

73.    The PHXPD's SAU conducts operations throughout the City using high-powered artillery, including automatic assault rifles such as an M4 or M16, and full tactical gear including helmets and body armor.

74.    The SAU follows a policy, practice, or custom of deploying a high degree of force without regard to the minimum level of force necessary to complete its operations.

75.    The SAU operates according to the training, practice, policy, or custom of drawing weapons, including high-powered automatic assault rifles, at unarmed persons, innocent persons like Henry, or bystanders, who pose little to no risk of serious physical injury to the SAU or the public.

76.    The SAU conducts such operations or missions without minimizing the risk to unarmed persons, innocent persons like Henry, or bystanders.

77.    On March 13, 2019, Henry did not present a serious risk of physical injury to law enforcement or the public.

78.    There was no specific exigent or emergent circumstance that justified lethal force against Henry.

79.    Defendants were not aware of any information that would lead a reasonable officer to believe Henry was in fact Eddison Jesus Noyola.

80.    Defendants were not aware of any facts or information that would lead a reasonable officer to believe the shooting of Henry was justifiable and appropriate.

81.    Henry was not the subject to be apprehended and there was no cause to seize him with deadly force.

82.    Henry did not possess a firearm or other weapon.

83.    Henry did not reach for his waistband because there was no firearm or other weapon for him to reach.

84.    There was no realistic way Henry would not use a firearm during his escape if he were in fact Eddison Jesus Noyola.



*Eddison Noyola with his guns*

85.   Henry did not make any threatening or furtive movements.

86.   In attempting to apprehend Henry, Defendants used tactics known to Defendants that pose a high risk of injury to others.

87.   Defendants could have taken Henry into custody without incident.

88.   Henry had no realistic avenue to escape.

89.   On March 14, 2019, one day after Henry's death, Eddison Jesus Noyola was captured without incident in Glendale by the Glendale Police Department.

90.   The application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued. *Torres v. Madrid*, 141 S. Ct. 989 (2021).

91.   The SAU's "special negotiators" failed to aid officers in deescalating the situation.

92.   Despite knowledge of the risks to Henry, Defendants Fricke and Carlsson made a conscious decision to ignore those risks by shooting him.

93.   Defendants Fricke and Carlsson knew Henry was immobilized, having been

- 12 -

shot in the back.

94.     Defendants Fricke and Carlsson and other officers at the scene were armed with high powered firearms and other deadly weapons.

95.     Defendants Fricke and Carlsson and other officers at the scene never saw a gun, or weapon, or any other threat that justified firing lethal rounds at Henry.

96.     Defendants Fricke and Carlsson fired lethal rounds at Henry without provocation or justification.

97.     Defendants did not have any verifiable information to suggest Henry committed any crime.

98.     Henry did nothing to threaten Defendants Fricke and Carlsson or any other officer.

99.     The City and Chief maintain long-lasting and widespread policies, practices, or customs that are deliberately indifferent to the safety of the public with whom officers come in contact, including Henry.

100.    The City and Chief are responsible for training and supervising their police officers regarding the use of force, including deadly force.

101.    The City and Chief failed to properly train and supervise their police officers regarding the use of deadly force.

102.    The City and Chief have a policy, practice, or custom of training officers to escalate situations and to use more force than is reasonably necessary or appropriate.

103.    The City and Chief knew that their policy, practice, or custom of training officers to escalate situations results in unreasonable uses of force, including deadly force.

104.    The City's and Chief's policy, practice, or custom of training officers to escalate situations increases the frequency of uses of force, including the frequency of deadly force.

105.    The City and Chief have a policy, practice, or custom of delaying, protracting, and expanding administrative investigations of officer-involved shootings.

- 13 -

106.   A purpose of the City's and Chief's policy, practice, or custom of delaying, protracting, and expanding administrative investigations of police shootings is to prevent the public and the victims of officer-involved shootings from learning the truth.

107.   A purpose of the City's and Chief's policy, practice, or custom of delaying, protracting, and expanding administrative investigations of police shootings is to prevent the victims of police shootings from obtaining the information necessary to ascertain whether bringing a lawsuit against the City, Chief, and their employees is warranted.

108.   The City's and Chief's policy, practice, or custom of delaying, protracting, and expanding administrative investigations of shootings and other uses of force encourages officers to use excessive or deadly force when such force is not reasonable or necessary.

109.   Through their policies, practices, or customs, the City and Chief created a culture of *de facto* absolute immunity regarding police use of force, including deadly force.

110.   The City and Chief failed to adopt and promulgate a written policy to protect the innocent from the deliberate, indifferent, and reckless use of excessive and deadly force.

111.   The City and Chief knew the deliberate, indifferent, and reckless use of excessive or deadly force constitute an unreasonable seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution.  In view of such knowledge, there was an obvious need to develop policies and training regarding the use of such force.

112.   Despite their knowledge of the obvious need for policies and training regarding the use of such force, the City and Chief failed to develop and implement policies to prevent the use of excessive or deadly force against innocent people who pose no immediate threat to officers even if the person does not submit and is not subdued.  *Torres, supra*, 141 S. Ct. 989.

113.   The City and Chief are responsible for the training and supervision of their officers, including training regarding searches, seizures, the use of force, and the safety of

- 14 -

the innocent.

114.   The Civil Rights Act, 42 U.S.C. § 1983, provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, a suit in equity, or any other proper proceeding for redress.

42 U.S.C. § 1983.

115.   As a result of the constitutional violations set forth below, Plaintiffs are entitled to an award of damages, costs of suit, pre-judgment interest, and attorneys' fees pursuant to 42 U.S.C. § 1988.

**COUNT 1**
**Civil Rights Violations Under 42 U.S.C. § 1983—Peace Officer Liability**
**(4th Amendment—Unreasonable Search and Seizure/Excessive and Deadly Force)**
**Against Defendants Fricke and Carlsson**

116.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 115 above as though fully set forth herein.

117.   The Fourth Amendment of the United States Constitution guarantees all persons the right to be secure in his person against unreasonable searches and seizures. This includes the right to be free from unreasonably excessive and deadly force. The Fourth Amendment is applied to state actors through the Fourteenth Amendment.

118.   The Due Process Clause of the Fourteenth Amendment guarantees all persons the right to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience.

119.   On March 13, 2019, Defendants Fricke and Carlsson, while acting under the color of state law, violated Henry's Fourth and Fourteenth Amendment right to be free from unreasonable search and seizure and the use of excessive and deadly force.

120.   Defendants Fricke's and Carlsson's deliberate indifference to Plaintiffs' constitutional rights shocks the conscience.

///

- 15 -

121.     Specifically, Fricke and Carlsson acted with a purpose to harm unrelated to legitimate law enforcement objective.   Henry was unarmed, not dangerous, had not committed a violent crime, did not pose an imminent threat of death or bodily injury, and fled only to save his life after the PHXPD escalated the situation.

122.     Such use of excessive deadly force against Henry was unnecessary, unjustified, and not objectively reasonable given the totality of the circumstances in that:

- Henry was fleeing to save his life.

- Henry was not in the process of committing a violent crime.

- Henry was unarmed and had no means of escape.

- Henry did not confront any officer of the PHXPD.  In fact, Henry tried to avoid confronting the officers by running into an open area away from the police.  There were ample officers in and around the area to intercept and capture Henry.

- Henry had not verbally or physically threatened anyone, nor did he attempt to physically harm anyone.

- There were no bystanders or civilians in the area.

- Henry did not make any furtive movements with his hands or body.

- Defendants Fricke and Carlsson lacked probable cause to believe Henry was their intended suspect.

- No exigent or emergent circumstances justified the killing of Henry.

- Henry had already been shot in the back and forcefully fell to the ground and therefore his flight was objectively terminated.

- Henry was visibly in pain and bleeding profusely.

- Henry had both hands in a position that would have prevented him from harming any officer while he was on the ground.

- Henry, unable to move, was surrounded, trapped in the jaws of a K-9, and was under the complete control of the PHXPD.

123.     There were available alternative means of apprehending Henry without the use of deadly force.

124.     The excessive and deadly forced used by Defendants Fricke and Carlsson was not reasonably necessary nor proportional to the purported threat.

- 16 -

125.    Factors in determining whether a use of force was reasonable include the relationship between the need for use of force and the amount of force used; the extent of force used; the extent of plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether plaintiff was actively resisting. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

126.    Defendants Fricke and Carlsson are not entitled to qualified immunity because they violated Henry's clearly established constitutional rights at the time they fatally shot Henry. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-236 (2009) (in deciding if qualified immunity applies, a court must determine (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation).

127.    Defendants Fricke's and Carlsson's violations of Henry's clearly established constitutional right against unreasonable search and seizure are imputed to Plaintiffs for the damages they sustained because of Henry's wrongful death.

128.    But for Defendants Fricke's and Carlsson's violations of Henry's clearly established constitutional rights, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

**COUNT 2**
**Civil Rights Violations Under 42 U.S.C. § 1983—Peace Officer Liability**
**(14th Amendment—Familial Association)**
**Against Defendants Fricke and Carlsson**

129.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 128 above as though fully set forth herein.

- 17 -

130.   The Fourth Amendment of the United States Constitution guarantees all persons the right to be secure in his person against unreasonable searches and seizures. This includes the right to be free from unreasonably excessive and deadly force. The Fourth Amendment is applied to state actors through the Fourteenth Amendment.

131.   The Due Process Clause of the Fourteenth Amendment guarantees all persons the right to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience.   This includes, but is not limited to, unwarranted state interference with familial relationships and associations.

132.   On March 13, 2019, Defendants Fricke and Carlsson, while acting under the color of state law, violated Henry's Fourth Amendment right against unreasonable search and seizure and Plaintiffs' Fourteenth Amendment right to be free from unwarranted interference with their familial relationship and association when they fatally shot Henry.

133.   Defendants Fricke's and Carlsson's deliberate indifference to Henry's and Plaintiffs' constitutional rights shocks the conscience.

134.   Specifically, Defendants' Fricke and Carlsson acted with a purpose to harm unrelated to legitimate law enforcement objective.  Henry was unarmed, not dangerous, had not committed a violent crime, did not pose an imminent threat of death or bodily injury, and fled only to save his life after the PHXPD escalated the situation by shooting at Henry's vehicle, forcing him to run.

135.   At the time of Henry's fatal shooting, Henry's Fourth Amendment right to be free from unreasonable search and seizure and the use of excessive and deadly force and Plaintiffs' Fourteenth Amendment right to be free from unwarranted interference with their familial relationship were clearly established.

136.   Such use of deadly force against Henry was unnecessary, unjustified, and not objectively reasonable given the totality of the circumstances in that:

- Henry was fleeing to save his life.
- Henry was not in the process of committing a violent crime.

- Henry was unarmed and had no means of escape.

- Henry did not confront any officer of the PHXPD. In fact, Henry tried to avoid confronting the officers by running into an open area away from the police. There were ample officers in and around the area to intercept and capture Henry.

- Henry had not verbally or physically threatened anyone, nor did he attempt to physically harm anyone.

- There were no bystanders or civilians in the area.

- Henry did not make any furtive movements with his hands or body.

- Defendants Fricke and Carlsson lacked probable cause to believe Henry was their intended suspect.

- No exigent or emergent circumstances justified the killing of Henry.

- Henry had already been shot in the back and forcefully fell to the ground and therefore his flight was objectively terminated.

- Henry was visibly in pain and bleeding profusely.

- Henry had both hands in a position that would have prevented him from harming any officer while he was on the ground.

- Henry, unable to move, was surrounded, trapped in the jaws of a K-9, and was under the complete control of the PHXPD.

137.    There were available alternative means of apprehending Henry without the use of deadly force.

138.    The excessive and deadly forced used by Defendants Fricke and Carlsson was not reasonably necessary nor proportional to the purported threat. *Kingsley, supra,* 576 U.S. at 396-97.

139.    Defendants Fricke and Carlsson are not entitled to qualified immunity because they violated Henry's and Plaintiffs' clearly established constitutional rights at the time they fatally shot Henry. *Harlow, supra,* 457 U.S. at 818, *Pearson, supra,* 555 U.S. at 230-32, 235-236.

140.    But for Defendants Fricke's and Carlsson's unwarranted state interference with Plaintiffs' familial relationships and associations, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of

Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

**COUNT 3**
**Civil Rights Violations Under 42 U.S.C. § 1983—Peace Officer Liability**
**(1st Amendment—Familial Association)**
**Against Defendants Fricke and Carlsson**

141.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 140 above as though fully set forth herein.

142.   The First Amendment of the United States Constitution also protects family relationships that presuppose deep attachments, commitments, and associations to and with the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs, but also distinctively personal aspects of one's life.  The First Amendment is applied to state actors through the Fourteenth Amendment.

143.   The Due Process Clause of the Fourteenth Amendment guarantees all persons the right to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience.  This includes, but is not limited to, unwarranted state interference with familial relationships and associations.

144.   On March 13, 2019, Defendants Fricke and Carlsson, while acting under the color of state law, violated Plaintiffs' First and Fourteenth Amendment right to be free from unwarranted interference with their familial relationship when they fatally shot Henry.

145.   Defendants Fricke's and Carlsson's deliberate indifference to Plaintiffs' constitutional rights shock the conscience.

146.   At the time Henry's fatal shooting, Plaintiffs' First Amendment right to be free from unwarranted interference with their familial relationship was clearly established.

147.   Such use of deadly force against Henry was unnecessary, unjustified, and not objectively reasonable given the totality of the circumstances in that:

- Henry was fleeing to save his life.

- Henry was not in the process of committing a violent crime.

- 20 -

- Henry was unarmed and had no means of escape.

- Henry did not confront any officer of the PHXPD. In fact, Henry tried to avoid confronting the officers by running into an open area away from the police. There were ample officers in and around the area to intercept and capture Henry.

- Henry had not verbally or physically threatened anyone, nor did he attempt to physically harm anyone.

- There were no bystanders or civilians in the area.

- Henry did not make any furtive movements with his hands or body.

- Defendants Fricke and Carlsson lacked probable cause to believe Henry was their intended suspect.

- No exigent or emergent circumstances justified the killing of Henry.

- Henry had already been shot in the back and forcefully fell to the ground and therefore his flight was objectively terminated.

- Henry was visibly in pain and bleeding profusely.

- Henry had both hands in a position that would have prevented him from harming any officer while he was on the ground.

- Henry, unable to move, was surrounded, trapped in the jaws of a K-9, and was under the complete control of the PHXPD.

148.   There were available alternative means of apprehending Henry without the use of deadly force.

149.   The excessive and deadly forced used by Defendants Fricke and Carlsson was not reasonably necessary nor proportional to the purported threat. *Kingsley, supra*, 576 U.S. at 396-97.

150.   Defendants Fricke and Carlsson are not entitled to qualified immunity because they violated Plaintiffs' clearly established constitutional rights at the time they fatally shot Henry. *Harlow, supra*, 457 U.S. at 818, *Pearson, supra*, 555 U.S. at 230-32, 235-236.

151.   But for Defendants Fricke's and Carlsson's unwarranted state interference with Plaintiffs' familial relationships and associations, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock,

and mental suffering already experienced, and reasonably probable to be experience in the future.

### COUNT 4
### Civil Rights Violations Under 42 U.S.C. § 1983—*Monell* Liability
### Against the City and Chief

152. Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 151 above as though fully set forth herein.

### Facts Giving Rise to *Monell* Liability

153. The PHXPD has a well-documented history of (1) using unreasonably excessive and/or deadly force; (2) hiring inadequately trained and unsupervised officers; and (3) failing to discipline its officers for misconduct to ensure compliance with the Constitution.

154. In 2007, PHXPD Officer Richard Chrisman killed 28-year-old Danny Rodriguez and his dog even though Chrisman knew Rodriguez was unarmed, was trying to flee the scene, and posed no threat of death or bodily injury. After Chrisman fabricated what transpired, another officer at the scene came forward with information implicating Chrisman. That officer was later painted as a "rat" and a coward by the PHXPD.

155. In 2014, PHXPD Sergeant Percy Dupra shot and killed Michelle Cusseaux on a mental health call. Although an internal PHXPD investigation following the shooting found no evidence of wrongdoing by Dupra, the public demanded an independent investigation. Accordingly, the Use of Force Board ("UFB"), staffed partially by civilians, conducted an investigation and determined Sergeant Dupra's actions were in violation of PHXPD policy. Upon information and belief, Sergeant Dupra was demoted only after the UFB finding.

156. On December 2, 2014, PHXPD Officer Mark Rine fatally shot unarmed Rumain Brisbon in the back. Upon information and belief, Officer Rine was never terminated or disciplined for the shooting.

157. In 2015, the City conducted its annual Officer Involved Shooting ("OIS") review to identify current needs in officer training. The OIS issued a report recommending certain policy changes, including "enhancing the [PHXPD] Operation Orders Use of Force

policy."[4] Upon information and belief, these recommendations were not implemented and/or effectively carried out at the time of Henry's death.

158.    In 2016, the City created the Community and Police Trust Initiative ("CPTI")[5] to recommend policy changes that could reduce PHXPD officer-involved shootings.  Upon information and belief, the majority of these recommendations were not implemented and/or were not effectively carried out at the time of Henry's death.

159.    In 2017, Muhammad Muhaymin Jr. was unarmed and non-threatening when the PHXPD fatally shot him for trying to bring his dog into a community center bathroom. Upon information and belief, no officers involved have been terminated or disciplined.

160.    In 2018, 34-year-old Alex Andrich was unarmed and non-threatening when he was fatally shot by PHXPD officers.  The PHXPD maintained that Andrich had advanced towards its officers and was holding something in his hand that was deemed a threat.  In actuality, the "threat" was the handcuffs around Andrich's wrist.  Upon information and belief, no officers involved have been terminated or disciplined.

161.    In 2018, 36-year-old Edward Brown was unarmed when the PHXPD shot him in the back, paralyzing him from the chest down, despite maintaining that Brown grabbed an officer's gun.  DNA evidence confirmed that Brown's fingerprints were not found on the gun barrel.  Upon information and belief, no officers involved have been terminated or disciplined.

162.    In the year leading up to the killing of Henry, PHXPD shootings increased at an alarming rate and hit record levels.  Phoenix, the fifth most populous city in the United States, had more police shootings than New York, Los Angeles, Chicago, and Houston with

---

[4] Tactical Review Committee, *Annual Report*, Phoenix Police Dept. (Jul. 25, 2015), https://www.phoenix.gov/policesite/Documents/shooting_review.pdf_012016.pdf.
[5] Joseph G. Yahner, *The President's Task Force on 21st Century Policing*, Phoenix Police Dept.                            (Oct.                    25,                        2016), https://www.phoenix.gov/policesite/Documents/21st%20Century%20Policing%20Executive%20Summary.pdf.

forty-four.[6]  The number of police shootings in Phoenix more than doubled from 2017.[7]  In 2018, the PHXPD led the nation in the number of fatal officer-involved shootings, although police shootings in similarly sized cities fell.[8]  On average, the PHXPD was recorded an officer-involved shooting every eight days in 2018.

163.   The increase in PHXPD shootings led The Chief in 2018 to call upon the National Police Foundation ("NPF") to conduct a study.   The study found, in part, a perception among sworn officers that "training was not adequately preparing officers for real life scenarios on the street."[9]  In 2019, the NPF provided multiple recommendations to the PHXPD, including to "[c]ontinue to improve training."[10]  Upon information and belief, the majority of these recommendations were not implemented and/or were not effectively carried out at the time of Henry's death.

164.   In 2019, Phoenix Mayor Kate Gallego recognized the need to implement long-recommended reforms to the PHXPD's training, supervision, and policies, and created a committee tasked with reviewing and implementing past recommendations from the CPTI and OSI reviews.[11]  Such recommendations included updating the PHXPD's Use of Force Operations Orders and increasing training de-escalation tactics and minimizing the use of force.   Upon information and belief, the majority of these recommendations were not implemented and/or were not effectively carried out at the time of Henry's death.

165.   On January 11, 2019, 19-year-old Jacob Harris, suspected of robbery, was fatally shot two times in the back while he was trying to run from PHXPD officers. Harris

---

[6] Bree Burkitt and Uriel J. Garcia, *Every 5 Days, an Arizona Officer Shoots Someone, a Republic Analysis Finds*, Ariz. Republic (Jun. 19, 2019), https://www.azcentral.com/in-depth/news/local/arizona-investigations/2019/06/19/arizona-phoenix-police-shootings-officers-record-levels/3029860002/.
[7] *Id.*
[8] *Id.*
[9] Chief Jeri L. Williams, *Executive Summary National Police Foundation Report*, Phoenix Police Dept. (April 2019), https://www.phoenix.gov/policesite/Documents/PD_Chief_ Williams_Exec_Summary_OIS.pdf.
[10] *Id.*
[11] Lindsay Walker, *New Committee Shares Reform Recommendations for Phoenix PD*, Patch (Aug. 21, 2020), https://patch.com/arizona/phoenix/new-committee-shares-reform-recommendations-phoenix-pd.

was alleged to have committed a robbery with three other people.  Officers at the scene reported they feared for their lives when Harris turned around like he was going to shoot them.[12]  Leaked helicopter footage, however, revealed Harris never turned around to face the officers nor did he threaten them.  Upon information and belief, no officers involved have been terminated or disciplined.

166.   On January 10, 2020, 19-year-old Dion Humphrey was unarmed when he was misidentified by PHXPD officers as his half-brother, who was wanted for various crimes.  After neither threatening or harming anyone, SAU officers escalated the situation by shooting Humphrey in the chest with a rubber bullet, tackling him, and beating him so badly he nearly died.  Upon information and belief, no officers involved have been terminated or disciplined.

167.   On July 7, 2020, the fatal shooting of James Garcia drew enough national attention that the FBI announced an independent investigation into the shooting.[13]  Upon information and belief, no officers involved have been terminated or disciplined.

168.   In 2020, the *Arizona Republic* reported that the PHXPD regularly "purged" the disciplinary records of its officers and since 2015, with 90 percent of all substantiated misconduct investigations having been purged.[14]

169.   On August 5, 2021, the U.S. Department of Justice announced a civil rights investigation into the City and the PHXPD that will examine, *inter alia*, all use of force by officers, including deadly force.

170.   On August 12, 2021, the Chief was suspended from the PHXPD after an independent investigation found, *inter alia*, that:

> Despite specific and clear knowledge, Phoenix Police Chief Jeri Williams and other top department leaders failed for years to investigate a controversial challenge coin circulating among the ranks

---

[12] Upon information and belief, PHXPD Officer Dave Norman, one of the witnesses in this stated that Harris reached for his waistband.
[13] *FBI Investigating Phoenix Police Department's July 4th Deadly Officer-Involved Shooting*, Fox 10 Phoenix (Jul. 7, 2020), https://www.fox10phoenix.com/news/fbi-investigating-phoenix-police-departments-july-4th-deadly-officer-involved-shooting
[14] Bill Barton, *A Mass Purge of Misconduct Records by Phoenix, Arizona Police*, Crim. Legal News (May 15, 2020), https://www.criminallegalnews.org/news/2020/may/15/mass-purge-misconduct-records-phoenix-arizona-police/.

that celebrated officers shooting a protester in the groin with a pepper ball.

### Plaintiffs' First *Monell* Claim—Municipal and Supervisor Liability
### (Custom—Excessive and Deadly Use of Force)
### Against the City and Chief

171.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 170 above as though fully set forth herein.

172.    The City and Chief knowingly and/or impliedly sanctioned, encouraged, tolerated, maintained, enforced, and/or acquiesced to a longstanding and widespread policy, practice, or custom that permits the PHXPD to use unreasonably excessive and/or deadly force, without regard for the consequences, when such force is not necessary or justified.

173.    The use of excessive and deadly force by the PHXPD is widespread and frequent, constituting a longstanding and well-settled PHXPD policy, practice, or custom. The use of unreasonably excessive and deadly force has become a traditional method of carrying out PHXPD policies, including but not limited to the PHXPD's Operation Orders Use of Force policy.

174.    The PHXPD's use of unreasonably excessive and deadly force has become a standard operating procedure even though such force is unreasonable and not necessary in certain situations, including when a suspect is unarmed, non-threatening, fleeing to save his life, and/or not in the process of committing a crime.

175.    The City and Chief knowingly and/or implicitly encouraged, tolerated, maintained, and enforced such conduct through the establishment of lethal tactical units, including the SAU, which employs a high degree of force without regard to the minimum level necessary to complete its operations and without precautions for innocent persons including Henry.

176.    The City's and The Chief's acquiescence, encouragement, enforcement, and/or tolerance of such unconstitutional policies, practices, or customs has led to a PHXPD-wide culture of "shoot first."  In view of this policy, PHXPD officers, including Defendants Fricke

and Carlsson, have used unreasonably excessive and/or deadly force with impunity, thereby violating the constitutional rights of Plaintiffs.

177.  As a result, the City and Chief were deliberately indifferent to the known and foreseeable risks of their policies, practices, or customs with respect to the constitutional rights of Henry, Plaintiffs, and others similarly situated, and was the moving force behind such constitutional violations.

178.  But for these constitutional violations, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

### Plaintiffs' Second *Monell* Claim—Municipal and Supervisor Liability (Custom—Discipline) Against the City and Chief

179.  Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 178 above as though fully set forth herein.

180.  There is substantial evidence and a pattern of repeated constitutional violations for which PHXPD officers, including Defendants Fricke and Carlsson, were not discharged and/or reprimanded.

181.  Based on this longstanding and well-settled pattern, the City and Chief have a policy, practice, or custom of ignoring misconduct by officers despite being clearly put on notice and having actual and/or constructive knowledge of such constitutional violations. Accordingly, the City and Chief knowingly and/or impliedly "turned a blind eye" to such misconduct and failed to take any preventative or remedial measures to stop or reduce the same.

182.  In view of these policies, the PHXPD is encouraged and permitted to use unreasonably excessive and deadly force with impunity, thereby creating and/or fostering a culture of misconduct without any repercussions for its officers.

183.   As a result, the City and Chief were deliberately indifferent to the known and foreseeable risks of their policies, practices, and customs with respect to the constitutional rights of Henry, Plaintiffs, and others similarly situated, and was the moving force behind such constitutional violations.

184.   But for these constitutional violations, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

### Plaintiffs' Third *Monell* Claim—Municipal and Supervisor Liability (Custom—"Code of Silence" and Inadequate Investigation) Against the City and Chief

185.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 184 above as though fully set forth herein.

186.   At all times relevant, the City and Chief encouraged, accommodated, and/or facilitated a "code of silence" among the PHXPD by which officers do not report and/or inaccurately report the misconduct of their colleagues.

187.   PHXPD officers who do come forward to report misconduct are chastised, labeled as cowardly, and/or face retaliation.

188.   Additionally, the City and Chief maintain grossly inadequate procedures for reporting, supervising, investigating, reviewing, and controlling such misconduct by PHXPD officers, including Defendants Fricke and Carlsson.

189.   At all times relevant, the City and Chief knowingly and/or impliedly authorized, condoned, and/or approved misconduct in the PHXPD despite impartial investigations disproving the findings of the PHXPD's internal investigations.

190.   At all times relevant, the City and Chief had actual and/or constructive knowledge that the policies, practices, and customs of the PHXPD were problematic, but failed to take any action to correct the pattern of police misconduct.

191.   The City's and Chief's deliberate indifference to the known and foreseeable risks of their policies, practices, and customs with respect to the constitutional rights of Henry, Plaintiffs, and others similarly situated, was the moving force behind such constitutional violations.

192.   But for these constitutional violations, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

### Plaintiffs' Fourth *Monell* Claim—Municipal and Supervisor Liability
### (Failure to Train and Supervise)
### Against the City and Chief

193.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 192 above as though fully set forth herein.

194.   The investigative materials documenting the conduct of the PHXPD in the investigation, pursuit, and death of Henry have, in part, been withheld from Plaintiffs. Plaintiff E.R., through his attorneys, has served numerous Public Record Requests upon the PHXPD pursuant to Arizona's Public Records Law.  Despite these legal requests, the PHXPD has refused and/or failed to disclose relevant material.  These items include officer-worn body camera footage, video footage, radio traffic, witness statements, photographs, and other unknown information.

195.   One of the primary duties and responsibilities of law enforcement is to make and keep records at the time of any event that will allow any officers who subsequently need to have knowledge of the events that occurred earlier in time are properly documented in the file.

196.   The City has the technological ability to do so through handheld communication devices, audio and video recording devices, and audio and video devices posted throughout the City to watch and observe the conduct of others.

197.   It is essential that law enforcement properly preserves the evidence of any potential crime whether it is perpetrated by a private citizen or police officer so that the evidence is available for appropriate use in later investigations and proceedings.

198.   Arizona's Freedom of Information Act allows private citizens to obtain governmental information about the records made and supposed to be made, and kept in the normal course of business during the investigation of criminal activities.

199.   The City has for decades failed to comply and keep up to date with its responsibilities to record, retain, and supply information to the public including the public records, recordings, statements, and other relevant evidence of criminal activity so that the truth can be known.

200.   This is the type of delay, protraction, and expansion the City keeps the public, the citizens of Arizona, and the citizens that the PHXPD is there to protect and defend from having access to information that allows them to determine whether the police have acted appropriately.  Their failure to keep such records is a violation of the Constitution.

///

201.   Under *Monell*, the police are to be trained to properly preserve, maintain, and retain evidence so it will be available to the public for later inspection and use.  The City, Chief, and the PHXPD have perpetuated a system of not honoring this very important tenet of police investigation.  This conduct blocks and interferes with the right of the public to have access to public information to determine whether a justifiable claim exists against an officer, the City, Chief, and the PHXPD.  Their failure to keep such records is a violation of the Constitution.

202.   Additionally, there is a program-wide deficiency and inadequacy in the PHXPD's officer training and/or supervision with respect to clear constitutional duties that regularly recur and arise in situations that its officers are certain to face, including the use of force.

///

203. This non-existent, inadequate, and/or deficient training and/or supervision includes but is not limited to, such topics as:

- Lawful searches, seizures, and the appropriate use of force.
- The use of excessive and deadly force.
- The use of excessive and deadly force in police pursuits.
- The use of force in situations where the suspect is non-violent, not dangerous, did not commit a violent crime, unarmed, and/or fleeing.
- The use of deadly forces as a last resort.
- Using other non-lethal options that are readily available and appropriate under the circumstances.
- Firearm and weapon recognition.
- Furtive movement and waistband recognition.
- Suspect identification, including tattoo and facial recognition.
- Suspect identity confirmation.
- Effective communication skills (in person or via radio).
- Effective listening skills, including gunshot detection.
- Communication of exculpatory information.
- De-escalation and confrontation techniques.
- The handling and releasing of K-9s on suspects who have surrendered.
- Deploying and/or using the SAU's "special negotiators."
- Probable cause determinations.

204. In view of the PHXPD's long history of repeated constitutional violations, the City and Chief knew or should have known of the deficiencies and inadequacies in the PHXPD's officer training and/or supervision. At all times relevant, the City and Chief were on notice of the need for further and/or different training and supervision.

205. Accordingly, the City and Chief knew or should have known that their inactions would frequently cause a deprivation of a person's constitutional rights, including

that of Plaintiffs and Henry.  At all times relevant, the City and Chief disregarded the known and obvious consequences of their inaction.

206.    The failure of the City and Chief to train and supervise its officers, including Defendants Fricke and Carlsson, amounts to a deliberate indifference to the constitutional rights of Henry, Plaintiffs, and others similarly situated, and was the moving force behind such constitutional violations.

207.    At the very least, the need for more or different training and supervision was so obvious and was so likely to result in the violation of constitutional rights that the City and Chief can reasonable be said to have been deliberately indifferent to this need.

208.    But the City's and Chief's failure to adequately train and supervise their officers, including Defendants Fricke and Carlsson, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

### Plaintiffs' Fifth *Monell* Claim—Municipal and Supervisor Liability <br> <u>(Ratification and Pattern of Ratification)</u> <br> Against the City and Chief

209.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 208 above as though fully set forth herein.

210.    Through their actions and inaction, the City and Chief knowingly adopted and expressly approved of Defendants Fricke's and Carlsson's decision to use unreasonably excessive and deadly force against Henry, and were complicit in and made a conscious and affirmative choice to ratify such conduct.

211.    The Chief, as the primary policymaker for the PHXPD, gave the PHXPD and its SAU a directive to "take [Eddison Jesus Noyola and Andrea Dixon] at the vehicle."

212.    Defendants Fricke and Carlsson unreasonably transferred this directive to Henry before shooting him.

213.    Additionally, the City and Chief were complicit in and ratified the conduct of other PHXPD officers in officer-involved shootings to use unreasonably excessive and/or deadly force.

214.    The City's and Chief's policy, practice, or custom in failing to properly investigate[15] and discipline officers who use and/or have established a pattern in the use of unreasonably excessive and/or deadly force.

215.    In view of these policies, practices, or customs, the City and Chief have established, maintained, encouraged, tolerated, and/or ratified the PHXPD's use of unreasonably excessive and/or deadly force.   Accordingly, PHXPD officers have been encouraged and permitted to use unreasonably excessive and deadly force with impunity and a deliberate indifference to the rights of innocent persons, including Henry.

216.    Additionally, by endorsing the decisions of Defendants Fricke and Carlsson and other subordinates who use unreasonable excessive or deadly force, the City and Chief made it clear there was a policy, practice, or custom that encouraged the use of such force at the time of Henry's death.

217.    The City's and Chief's ratification of such conduct was so closely related to the deprivation of Henry's and Plaintiff's constitutional rights that the City's and Chief's action and inaction were the moving force behind the deprivation of such rights.

218.    The City's and Chief's deliberate indifference to the known and foreseeable risks of their policies, practices, and customs violated the constitutional rights of Henry, Plaintiffs, and others similarly situated and was the moving force behind such constitutional violations.

219.    But for the City's and Chief's ratification of Defendants Fricke's and Carlsson's misconduct, Plaintiffs have suffered the loss of love, affective, companionship,

---

[15] Upon information and belief, PHXPD Officer Dave Norman who aided in the pursuit of Henry on March 13, 2019, was the shooting officer in three prior officer-involved shootings, including the killing of Jacob Harris just *three months* before the death of Henry. Harris's death was still under investigation at the time of Henry's killing.

care, protection, consortium, and guidance since the death of Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

**COUNT 5**
**Negligence**
**Against All Defendants**

220.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 219 above as though fully set forth herein.

221.   Defendants owed a duty of care to Henry to take all reasonable precautions to avoid placing him at an unreasonable risk of injury.

222.   Defendants Fricke and Carlsson failed to exercise reasonable care with respect to the rights and safety of Henry by fatally shooting him without justification.

223.   Defendants Fricke and Carlsson failed to exercise reasonable care with respect to Henry because they knew or should have known that Henry was not Eddison Jesus Noyola.

224.   Additionally, the City and Chief owed Henry a duty to use due care and exercise reasonable conduct in the hiring, retention and training, supervision, and/or enablement of their owners, employees, agents, partners, principals, members, directors, servants, contractors, joint venturers, alter egos, and/or representatives, including but not limited to, Defendants Fricke and Carlsson.

225.   The City and Chief failed to use due care and exercise reasonable conduct in the hiring, retention and training, supervision, and/or enablement of their owners, employees, agents, partners, principals, members, directors, servants, contractors, joint venturers, alter egos, and/or representatives, including but not limited to, Defendants Fricke and Carlsson.

226.   Under the doctrine of *respondeat superior*, the City and Chief are responsible for the conduct of Defendants Fricke and Carlsson and are liable to Plaintiffs for the damages resulting from their conduct.

227.   As a direct and proximate result of Defendants' negligence, Plaintiffs suffered damages in an amount to be proven at trial.

**COUNT 6**
**Gross/Aggravated Negligence (Willful or Wanton Conduct)**
**Against All Defendants**

228.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 227 above as though fully set forth herein.

229.   Defendants Fricke and Carlsson engaged in willful or wanton conduct by their action or inaction and with reckless indifference to the rights and safety of Henry because they knew or should have known that their action or inaction created an unreasonable risk of harm to Henry, and that the risk of harm to Henry was so great that it was highly probable that harm would result.

230.   Defendants Fricke and Carlsson were grossly negligent and deliberately indifferent to the rights and safety of decedent Henry, namely, by causing, or allowing to cause, the violent, unjustified death of Henry.

231.   Defendants Fricke and Carlsson engaged in the above-described misconduct with the intent to cause injury, with the intent that such conduct was motivated by spite or ill will, with the intent to serve their own interests by knowingly and consciously disregarding a substantial risk that their conduct might significantly injure or impair the rights of others, and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Henry.

232.   Under the doctrine of *respondeat superior*, the City and Chief are responsible for the conduct of Defendants Fricke and Carlsson and are liable to Plaintiffs for the damages resulting from their conduct.

233.   As a direct and proximate result of this gross/aggravated negligence, recklessness, and/or willful and wanton conduct, Plaintiffs suffered damages in an amount to be proven at trial.

///

- 35 -

**COUNT 7**
**Assault and Battery**
**Against All Defendants**

234.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 233 above as though fully set forth herein.

235.   At all times relevant, Defendants Fricke and Carlsson were armed with a firearm, a deadly weapon or instrument as defined under Arizona law.

236.   Defendants Fricke and Carlsson caused serious injury to Henry resulting in Henry's death.

237.   Defendants Fricke and Carlsson used a deadly weapon to kill Henry.

238.   Defendants Fricke and Carlsson shot Henry while he was physically restrained and while his capacity to resist was substantially impaired.

239.   All of the above-described acts of aggravated assault and battery are in violation of A.R.S. §§ 13-1204(A)(1),(2), and (4) and constitute negligence *per se* under Arizona law.

240.   Under the doctrine of *respondeat superior*, the City and Chief are responsible for the conduct of Defendants Fricke and Carlsson and are liable to Plaintiffs for the damages resulting from their conduct.

241.   But for this assault and battery, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of Henry and in the future, and have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

**COUNT 8**
**Death by Wrongful Act**
**Against All Defendants**

242.   Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 241 above as though fully set forth herein.

243.   Pursuant to the Arizona Wrongful Death Act, A.R.S. §§ 12-611 to 613, liability for wrongful death exists if a person's death is caused by "wrongful act, neglect,

or default."

244.   Defendants Fricke and Carlsson, and each of them, caused the death of Henry by their wrongful actions, neglect, and/or default.

245.   Plaintiffs are entitled to maintain an action for wrongful death against Defendants Fricke and Carlsson, and each of them, for such losses and injuries suffered by them as the adult children and statutory beneficiaries of decedent Henry.

246.   As a result of Defendants Fricke's and Carlsson's wrongful actions, neglect, and/or default, Plaintiffs have suffered the loss of love, affective, companionship, care, protection, consortium, and guidance since the death of Henry and in the future.

247.   As a result of Defendants Fricke's and Carlsson's wrongful actions, neglect, and/or default, Plaintiffs have also suffered pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experience in the future.

248.   Under the doctrine of *respondeat superior*, the City and Chief are responsible for the conduct of Defendants Fricke and Carlsson and are liable to Plaintiffs for the damages resulting from their conduct.

249.   As a direct and proximate result of Defendants' wrongful actions, neglect, and/or default, Plaintiffs suffered damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, as follows:

A.      For general damages in an amount to be proven at trial;

B.      For special damages, including but not limited to the expenses of burial and funeral;

C.      For taxable costs and pre- and post-judgment interest to the extent permitted by both federal and state law;

D.      For punitive and exemplary damages pursuant to 42 U.S.C. § 1983;

E.      For attorney's fees and expense pursuant to 42 U.S.C. § 1988; and

- 37 -

F.     For such other and further relief as the Court may deem just and proper.

DATED this 19th day of August 2021.

> **BURG SIMPSON**
> **ELDREDGE HERSH & JARDINE, P.C.**
>
> */s/ J. Tyrrell Taber*
> J. Tyrrell Taber
> Christopher Post
> Adam J. Gorski
> *Attorneys for Plaintiffs*
>
> **MAYES TELLES PLLC**
>
> */s/ J. Blake Mayes*
> J. Blake Mayes
> Edward G. Hamel
> *Attorneys for Plaintiffs*

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272262

Person/Attorney Filing: John T Taber
Mailing Address: 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Phone Number: (602)777-7000
E-Mail Address: ttaber@burgsimpson.com
[ □ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 005204, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Paul J. Theut
Plaintiff(s),

v.

City of Phoenix, et al.
Defendant(s).

Case No.  **CV2021-013125**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.


**RESPECTFULLY SUBMITTED this**


By: John T Taber /s/
Plaintiff/Attorney for Plaintiff

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272261

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

**Plaintiff's Attorneys:**
John T Taber - Primary Attorney
Bar Number: 005204, issuing State: AZ          **CV2021-013125**
Law Firm: Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Dr East
Englewood, CO 80112
Telephone Number: (602)777-7000
Email address: ttaber@burgsimpson.com

Christopher Post
Bar Number: 28330, issuing State: AZ
Law Firm: Burg Simpson Eldredge Hersh & Jardine PC
Telephone Number: (602)777-7000

Adam J. Gorski
Bar Number: 36490, issuing State: AZ
Law Firm: Burg Simpson Eldredge Hersh & Jardine PC
Telephone Number: (602)777-7000

J. Blake Mayes
Bar Number: 24159, issuing State: AZ
Law Firm: Mayes Telles PLLC
Telephone Number: (602)714-7900

Edward G. Hamel
Bar Number: 36364, issuing State: AZ
Law Firm: Mayes Telles PLLC
Telephone Number: (602)714-7900

**Plaintiff:**
Paul J. Theut
5150 North 16th Street B236
Phoenix, AZ 85016
Telephone Number: (602)263-5005
Email address: pjt@theut.net

**Defendants:**

City of Phoenix
200 West Washington
Phoenix, AZ 85003

Jeri L Williams
620 West Washington Street
Phoenix, AZ 85003

Kyle Fricke
620 West Washington Street
Phoenix, AZ 85003

Jane Doe Fricke
620 West Washington Street
Phoenix, AZ 85003

Andrew Carlsson
620 West Washington Street
Phoenix, AZ 85003

Jane Doe Carlsson
620 West Washington Street
Phoenix, AZ 85003

Discovery Tier t3

Case Category: Other Civil Case Categories
Case Subcategory: Municipal Liab/Wrongful Death

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
8/19/2021 3:50:10 PM
Filing ID 13272260

1

2  J. Tyrrell Taber (005204)
    Christopher Post (028330)
3  Adam J. Gorski (036490)
    **BURG SIMPSON**
4  **ELDREDGE HERSH & JARDINE, P.C.**
    2390 E. Camelback Road, Suite 403
5  Phoenix, AZ 85016
    Telephone: (602) 777-7000
6  Facsimile: (602) 777-7008
    ttaber@burgsimpson.com
7  cpost@burgsimpson.com
    agorski@burgsimpson.com
8  Send All Minute Entries to:
    azcourt@burgsimpson.com
9  *Attorneys for Plaintiffs*

10  J. Blake Mayes (024159)
    Edward G. Hamel (036364)
11  **MAYES TELLES PLLC**
    3636 N. Central Avenue, Suite 1000
12  Phoenix, AZ 85012
    Telephone: (602) 714-7900
13  Facsimile: (602) 357-3037
    Blake@mayestelles.com
14  Edward@mayestelles.com
    *Attorneys for Plaintiffs*

15

16              **ARIZONA SUPERIOR COURT**

17                **MARICOPA COUNTY**

18

| | |
|---|---|
| PAUL J. THEUT, in his capacity as guardian *ad litem* (application pending) to E.R., D.R., G.R., and Y.R., minors, as statutory Plaintiffs and beneficiaries of HENRY RIVERA, deceased, | Case No.  CV2021-013125 |
| | **DEMAND FOR JURY TRIAL** |
|                Plaintiffs, | |
| vs. | |
| CITY OF PHOENIX, an Arizona municipal corporation and governmental entity; JERI L. WILLIAMS, in her official capacity as Chief of Police for the City of Phoenix; KYLE FRICKE, in his individual and official capacity as law enforcement officer of the Phoenix Police Department and JANE DOE FRICKE, husband and wife;  ANDREW CARLSSON, in his | |

19

20

21

22

23

24

25

26

27

28

1  individual and official capacity as law
   enforcement officer of the Phoenix Police
2  Department and JANE DOE CARLSSON,
   husband and wife;  and JOHN and JANE
3  DOES 1 – 10,

4                    Defendants.

5

6        Pursuant to Rule 38, Arizona Rules of Civil Procedure, Plaintiffs demand a jury trial

7  on all Counts so triable.

8        DATED this 19th day of August 2021.

9

10

11                              **BURG SIMPSON**
                                **ELDREDGE HERSH & JARDINE, P.C.**
12

13                              */s/ J. Tyrrell Taber*
                                J. Tyrrell Taber
14                              Christopher Post
                                Adam J. Gorski
15                              *Attorneys for Plaintiffs*

16

17                              **MAYES TELLES PLLC**

18                              */s/ J. Blake Mayes*
                                J. Blake Mayes
19                              Edward G. Hamel
                                *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

Clerk of the Superior Court
*** Electronically Filed ***
K. Higuchi-Mason, Deputy
8/31/2021 5:08:05 PM
Filing ID 13320978

1

2

3

4

5

6

7

8

9

10

11

12

13

14

J. Tyrrell Taber (005204)
Christopher Post (028330)
Adam J. Gorski (036490)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
2390 E. Camelback Road, Suite 403
Phoenix, AZ 85016
Telephone: (602) 777-7000
Facsimile: (602) 777-7008
ttaber@burgsimpson.com
cpost@burgsimpson.com
agorski@burgsimpson.com
Send All Minute Entries to:
azcourt@burgsimpson.com
*Attorneys for Plaintiffs*

J. Blake Mayes (024159)
Edward G. Hamel (036364)
**MAYES TELLES PLLC**
3636 N. Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: (602) 714-7900
Facsimile: (602) 357-3037
Blake@mayestelles.com
Edward@mayestelles.com
*Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ARIZONA SUPERIOR COURT

## MARICOPA COUNTY

| | |
|---|---|
| PAUL J. THEUT, in his capacity as statutory representative (application pending) to E.R., D.R., G.R., and Y.R., minors, as statutory Plaintiffs and beneficiaries of HENRY RIVERA, deceased, | Case No.   CV2021-013125 |
| | **MOTION FOR APPOINTMENT OF STATUTORY REPRESENTATIVE** |
| Plaintiffs, | Assigned to the Hon. Daniel Martin |
| vs. | |
| CITY OF PHOENIX, an Arizona municipal corporation and governmental entity; JERI L. WILLIAMS, in her official capacity as Chief of Police for the City of Phoenix; KYLE FRICKE, in his individual and official capacity as law enforcement officer of the Phoenix Police Department and JANE DOE FRICKE, husband and | |

wife;  ANDREW CARLSSON, in his
individual and official capacity as law
enforcement officer of the Phoenix Police
Department and JANE DOE CARLSSON,
husband and wife;  and JOHN and JANE
DOES 1 – 10,

                          Defendants.

---

Pursuant to Ariz. R. Civ. P. 17(f)(2), Plaintiffs respectfully move for an Order of this Court appointing attorney Paul J. Theut as statutory representative for Plaintiffs E.R., D.R., G.R., and Y.R. ("minors") and state as follows:

1.      Decedent Henry Rivera died on March 13, 2019, in Maricopa County, Arizona, leaving four biological children, E.R., D.R., G.R., and Y.R. as his surviving statutory beneficiaries under the Arizona Wrongful Death Act, A.R.S. § 12-611 *et seq.*

2.      Natalie Mejia is the mother and next friend to E.R., born October 17, 2018.

3.      Noelia Cavazos Rivera is the mother and next friend to D.R., born November 11, 2008; G.R., born February 7, 2013; and Y.R., born March 7, 2007.

4.      A statutory representative, formerly known as guardian *ad litem*, is needed to protect the interests of the minors in this case.

5.      Paul J. Theut is an attorney, and holds a contract with the Maricopa County Office of Contract Counsel where he regularly accepts appointment by Maricopa County Superior Court judges to serve as statutory representative or guardian *ad litem*.

6.      Undersigned counsel have discussed individually with Ms. Mejia and Ms. Rivera the need for a statutory representative to protect the best interests of E.R., D.R., G.R., and Y.R.

7.      Both Ms. Mejia and Ms. Rivera agree to the appointment of Paul J. Theut as statutory representative for the minors.

8.      Notice of Paul J. Theut's application for appointment as statutory representative has or will be given to Ms. Mejia and Ms. Rivera and they consent to said appointment without further notice and without testimony.

9. Upon obtaining any favorable settlement, verdict, or judgment, a petition for conservatorship will be filed with the Probate Court.

10. No bond shall be required.

11. Pursuant to Ariz. R. Civ. P. 17(f)(2)(D), Paul J. Theut as statutory representative shall not be personally liable for costs.

12. The legal names of E.R., D.R., G.R., and Y.R., shall be filed separately under seal.

13. The minors in this action shall be referred to in all future filings using their abbreviated names unless the Court orders otherwise.

14. In compliance with Ariz. R. Civ. P. 17(f)(2)(D), the consent of Paul J. Theut to the appointment as statutory representative is filed herein.

**WHEREFORE,** Plaintiffs respectfully request that the Court:

A. Enter an Order appointing Paul J. Theut as statutory representative for minors E.R., D.R., G.R., and Y.R.;

B. Enter an Order that no bond shall be required;

C. Enter an Order that Paul J. Theut shall not be personally liable for costs;

D. Enter an Order that the legal names of E.R., D.R., G.R., and Y.R. shall be filed separately under seal;

E. Enter an Order that E.R., D.R., G.R., and Y.R. shall be referred to in all future filings using their abbreviated names unless the Court orders otherwise; and

///
///
///
///
///
///
///

1
2

     F.     Enter an Order awarding Plaintiffs any other relief the Court deems equitable and just.

3

     DATED this 26th day of August 2021.

4
5
6

                     **BURG SIMPSON**
                     **ELDREDGE HERSH & JARDINE, P.C.**

7
8
9

                     */s/ J. Tyrrell Taber*
                     J. Tyrrell Taber
                     Christopher Post
                     Adam J. Gorski
                     *Attorneys for Plaintiffs*

10
11

                     **MAYES TELLES PLLC**

12
13
14

                     */s/ J. Blake Mayes*
                     J. Blake Mayes
                     Edward G. Hamel
                     *Attorneys for Plaintiffs*

15
16
17
18

        **CONSENT TO APPOINTMENT AS STATUTORY REPRESENTATIVE**

19
20

     I, Paul J. Theut, having reviewed the Motion for Appointment of Statutory Representative for Plaintiffs E.R., D.R., G.R., and Y.R., hereby consent to such appointment without testimony.

21
22

Dated:  8-30-2021

                     Paul J. Theut

23
24
25
26
27
28

1

ORIGINAL electronically filed via
TurboCourt this 31st day of
2   August 2021

3   COPY of the foregoing served
electronically this 31st day of
4   August 2021 to the Hon. Daniel Martin of
the Maricopa County Superior Court

5

6   */s/ Deanna Allen*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DL Investigations & Attorney Support LLC
7501 N. 16th Street, Suite 200
Phoenix, AZ 85020
(602) 285-9901

CLERK OF THE
SUPERIOR COURT
FILED
J. FORD, DEP

2021 AUG 31  AM 11: 33

Inv. #
_____
143532

# SUPERIOR COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF MARICOPA

**PAUL J. THEUT**

**Plaintiff / Petitioner,**

vs.

**CITY OF PHOENIX; et al.**

**Defendant / Respondent.**

[ ORIGINAL ]

NO.   CV2021-013125
CERTIFICATE OF SERVICE

__Shana Maddux_____ , the undersigned certifies under penalty of perjury:  That I am fully qualified pursuant to RCP 4 (d), 4 (e), 45 (b) and/or ARS 13-4072, to serve process in this case, and received for service the following documents in this action:
**SUMMONS & COMPLAINT, CERTIFICATE OF ARBITRATION, CIVIL COVER SHEET, DEMAND FOR JURY TRIAL**

from _____**Burg Simpson Eldredge Hersh Jardine, P.C.**_____ on ____**8/27/21**____ ;
that I personally served copies of these documents on those named below in the manner and time and place shown; and except where noted, all services were made in Maricopa County, Arizona.

**NAME:**   **ANDREW CARLSSON AND JANE DOE CARLSSON**

**DATE & TIME:**  8/29/21 3:48pm
**PLACE &**   5503 W. ARROWHEAD LAKES DRIVE  GLENDALE, AZ 85308, which is his/her usual place of abode.
**MANNER:**   By serving Andrew Carlsson was served for himself and for his wife. He refused to provide any information regarding his wife., a person of suitable age and discretion residing therein, in person.

Description of the Named: Male, Age: 50's, Ht: 5' 9in., Wt: 250, Hair: brown/grey, Ethnicity: Cauc.

| Statement of Costs | |
| --- | --- |
| Services | $32.00 |
| Mileage | $69.60 |
| Sp. Handl. | |
| Witness | |
| Advances | |
| Cert. Prep | $15.00 |
| Other | $22.50 |
| **Total** | **$139.10** |

90 pages

*Affiant - Registered in*

**Maricopa County**

The above is covered by A.R.S. as amended 41-314 & 11-45 and Rules 4, 5 and 45.

DL Investigations & Attorney Support LLC
7501 N. 16th Street, Suite 200
Phoenix, AZ 85020
(602) 285-9901

CLERK OF THE
SUPERIOR COURT
FILED
J. FORD, DEP
2021 SEP -2  PM 12: 23

Inv. #
_____
143535

# SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

**PAUL J. THEUT**

                                  **Plaintiff / Petitioner,**

vs.

**CITY OF PHOENIX; et al.**

                                    **Defendant / Respondent.**

**ORIGINAL**

NO.   CV2021-013125
CERTIFICATE OF SERVICE

<u>Geoffrey Roberts</u>          , the undersigned certifies under penalty of perjury:  That I am fully qualified pursuant to RCP 4 (d), 4 (e), 45 (b) and/or ARS 13-4072, to serve process in this case, and received for service the following documents in this action:
**SUMMONS & COMPLAINT, CERTIFICATE OF ARBITRATION, CIVIL COVER SHEET, DEMAND FOR JURY TRIAL**

from        **Burg Simpson Eldredge Hersh Jardine, P.C.**        on     **8/27/21**    ;
that I personally served copies of these documents on those named below in the manner and time and place shown; and except where noted, all services were made in Maricopa County, Arizona.

**NAME:**    **JERI L. WILLIAMS, Chief of Police, City of Phoenix Police Department, c/o Phoenix City Clerk**

**DATE & TIME:** 8/31/21 11:48am
**PLACE &**     200 W. WASHINGTON, STE.1500,  PHOENIX, AZ 85003, which is his/her place of business.
**MANNER:**     By serving Matt Martin, Special Deputy City Clerk, a person authorized to accept such service on their behalf, in person.

Description of the Named: Male, Age: 40's, Ht: 5' 6in., Wt: 170, Eyes: brown, Hair: brown, Ethnicity: Cauc.

**Statement of Costs**
| | |
|---|---|
| Services | $16.00 |
| Mileage | $24.00 |
| Sp. Handl. | |
| Witness | |
| Advances | |
| Cert. Prep | $15.00 |
| Other | $11.25 |
| Total | $66.25 |

45 pages

Affiant, Registered in
Maricopa County

The above is covered by A.R.S. as amended 41-314 & 11-45 and Rules 4, 5 and 45.

DL Investigations & Attorney Support LLC
7501 N. 16th Street, Suite 200
Phoenix, AZ 85020
(602) 285-9901

CLERK OF THE
SUPERIOR COURT
FILED
J. FORD, DEP

2021 SEP -2 PM 12: 23

Inv. #

**143534**

**SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

**PAUL J. THEUT**

Plaintiff / Petitioner,

vs.

**CITY OF PHOENIX; et al.**

Defendant / Respondent.



**ORIGINAL**

NO.  **CV2021-013125**

CERTIFICATE OF SERVICE

<u>**Geoffrey Roberts**</u>                , the undersigned certifies under penalty of perjury:  That I am fully qualified pursuant to RCP 4 (d), 4 (e), 45 (b) and/or ARS 13-4072, to serve process in this case, and received for service the following documents in this action:
**SUMMONS & COMPLAINT, CERTIFICATE OF ARBITRATION, CIVIL COVER SHEET, DEMAND FOR JURY DUTY**

from        **Burg Simpson Eldredge Hersh Jardine, P.C.**        on        **8/27/21**        ;
that I personally served copies of these documents on those named below in the manner and time and place shown; and except where noted, all services were made in Maricopa County, Arizona.

**NAME:**   **CITY OF PHOENIX, c/o Phoenix City Clerk**

**DATE & TIME:**  8/31/21 11:48am
**PLACE &**      200 W. WASHINGTON  STE.1500  PHOENIX, AZ 85003, which is his/her place of business.
**MANNER:**     By serving Matt Martin, Special Deputy City Clerk, a person authorized to accept such service on their behalf, in person.

Description of the Named: Male, Age: 40's, Ht: 5' 6in., Wt: 170, Eyes: brown, Hair: brown, Ethnicity: Cauc.

| Statement of Costs | | |
|---|---|---|
| Services | $16.00 | |
| Mileage | $24.00 | |
| Sp. Handl. | | |
| Witness | | |
| Advances | | |
| Cert. Prep | $15.00 | 45 pages |
| Other | $11.25 | |
| **Total** | **$66.25** | |

Affiant  Registered in
Maricopa County

The above is covered by A.R.S. as amended 41-314 & 11-45 and Rules 4, 5 and 45.

Granted with Modifications
***See eSignature page***

Clerk of the Superior Court
*** Electronically Filed ***
J. Eaton, Deputy
9/9/2021 8:00:00 AM
Filing ID 13338882

1    J. Tyrrell Taber (005204)
2    Christopher Post (028330)
     Adam J. Gorski (036490)
3    **BURG SIMPSON**
     **ELDREDGE HERSH & JARDINE, P.C.**
4    2390 E. Camelback Road, Suite 403
     Phoenix, AZ 85016
5    Telephone: (602) 777-7000
     Facsimile: (602) 777-7008
6    ttaber@burgsimpson.com
     cpost@burgsimpson.com
7    agorski@burgsimpson.com
     Send All Minute Entries to:
8    azcourt@burgsimpson.com
     *Attorneys for Plaintiffs*
9
     J. Blake Mayes (024159)
10   Edward G. Hamel (036364)
     **MAYES TELLES PLLC**
11   3636 N. Central Avenue, Suite 1000
     Phoenix, AZ 85012
12   Telephone: (602) 714-7900
     Facsimile: (602) 357-3037
13   Blake@mayestelles.com
     Edward@mayestelles.com
14   *Attorneys for Plaintiffs*

15                    **ARIZONA SUPERIOR COURT**

16                      **MARICOPA COUNTY**

17   PAUL J. THEUT, in his capacity as
18   statutory representative (application         Case No.   CV2021-013125
     pending) to E.R., D.R., G.R., and Y.R.,
19   minors, as statutory Plaintiffs and          **ORDER APPOINTING STATUTORY**
     beneficiaries of HENRY RIVERA,               **REPRESENTATIVE**
20   deceased,

21                              Plaintiffs,        Assigned to the Hon. Daniel G. Martin

22   vs.

23

24
     CITY OF PHOENIX, an Arizona
25   municipal corporation and governmental
     entity; JERI L. WILLIAMS, in her official
26   capacity as Chief of Police for the City of
     Phoenix; KYLE FRICKE, in his individual
27   and official capacity as law enforcement
     officer of the Phoenix Police Department
28   and JANE DOE FRICKE, husband and

RECEIVED
CITY OF PHOENIX
2021 SEP 13 PM 3 57
CITY ATTORNEYS OFFICE

2021 SEP 13 PM 2:49
CITY CLERK DEPT.

1  wife;  ANDREW CARLSSON, in his
   individual and official capacity as law
2  enforcement officer of the Phoenix Police
   Department and JANE DOE CARLSSON,
3  husband and wife;  and JOHN and JANE
   DOES 1 – 10,
4
                          Defendants.
5

6         THIS MATTER coming before the Court on Plaintiffs' Motion for Appointment of

7  Statutory Representative, and good cause appearing,

8         IT IS ORDERED:

9         1.     Paul J. Theut is appointed as Statutory Representative for minors E.R., D.R.,

10  G.R., and Y.R.

11         2.     No bond shall be required.

12         3.     Paul J. Theut shall not be personally liable for costs.

13         4.     The legal names of E.R., D.R., G.R., and Y.R. shall be filed separately under

14  seal.

15         5.     E.R., D.R., G.R., and Y.R. shall be referred to in all future filings using their

16  abbreviated names unless the Court orders otherwise.

17

18         DONE IN OPEN COURT this _____ day of _____, 2021.

19

20

21                                 _____
                                   Honorable Daniel G. Martin
22                                 Maricopa County Superior Court Judge

23

24

25

26

27

28

                                        - 2 -

# eSignature Page 1 of 1

Filing ID: 13338882   Case Number: CV2021-013125
Original Filing ID: 13320978

**Granted with Modifications**



/S/ Daniel Martin Date: 9/6/2021

Judicial Officer of Superior Court

**ENDORSEMENT PAGE**

CASE NUMBER: CV2021-013125

E-FILING ID #: 13338882

SIGNATURE DATE: 9/6/2021

FILED DATE: 9/9/2021 8:00:00 AM

J TYRRELL TABER

JOSHUA BLAKE MAYES

ANDREW CARLSON
620 W WASHINGTON ST PHOENIX AZ 85003

CITY OF PHOENIX
200 W WASHINGTON PHOENIX AZ 85003

JERI L WILLIAMS
620 W WASHINGTON ST PHOENIX AZ 85003

KYLE FRICKLE
620 W WASHINGTON ST PHOENIX AZ 85003